UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| UNILOC USA, INC., et al.,<br><br>    Plaintiffs,<br><br>    v.<br><br>APPLE INC,<br><br>    Defendant. | Case No. 19-cv-01692-EJD (VKD)<br><br>**ORDER GRANTING DEFENDANT'S MOTION TO STRIKE INFRINGEMENT CONTENTIONS; ORDER TO SHOW CAUSE**<br><br>Re: Dkt. No. 95 |

Plaintiffs Uniloc USA, Inc. and Uniloc Luxembourg, S.A. (collectively, "Uniloc")[1] sue defendant Apple, Inc. ("Apple"), alleging infringement of claims 1-3 and 5-11 of U.S. Patent No. 7,587,207 ("the '207 patent"), titled "Data Delivery Through Beacons." Dkt. No. 1. The accused products include various Apple products, such as iPhones, iPads and iPods. *Id*.; *see also* Dkt. No. 95-4. Apple now moves to strike Uniloc's indirect infringement contentions, arguing that Uniloc's contentions do not comply with Patent L.R. 3-1. The matter is deemed suitable for determination without oral argument. Civ. L.R. 7-1(b); Dkt. No. 103.

Upon consideration of the moving and responding papers, the Court grants the motion to strike with leave to amend. The Court also orders Uniloc to show cause why it should not be required to reimburse Apple for the reasonable attorneys' fees and costs Apple incurred in bringing the motion to strike.

---

[1] Plaintiffs state that all rights, interest, and title in the '207 patent, including the right to all causes of action, have been transferred to Uniloc 2017 LLC. They have a pending motion to add Uniloc 2017 LLC as a plaintiff to this action. Dkt. No. 98.

# I. LEGAL STANDARD

Patent Local Rule 3-1 requires, among other things:

> [A] party claiming patent infringement shall serve on all parties . . . the "Disclosure of Asserted Claims and Infringement Contentions" [which] shall contain the following information:
>
> > (a) Each claim of each patent in suit that is allegedly infringed by each opposing party, including for each claim the applicable statutory subsections of 35 U.S.C. § 271 asserted;
> >
> > (b) Separately for each asserted claim, each accused apparatus, product, device, process, method, act, or other instrumentality ("Accused Instrumentality") of each opposing party of which the party is aware. This identification shall be as specific as possible. Each product, device, and apparatus shall be identified by name or model number, if known. Each method or process shall be identified by name, if known, or by any product, device, or apparatus which, when used, allegedly results in the practice of the claimed method or process;
> >
> > (c) A chart identifying specifically where and how each limitation of each asserted claim is found within each Accused Instrumentality, including for each limitation that such party contends is governed by 35 U.S.C. § 112(6), the identity of the structure(s), act(s), or material(s) in the Accused Instrumentality that performs the claimed function[;]
> >
> > (d) For each claim which is alleged to have been indirectly infringed, an identification of any direct infringement and a description of the acts of the alleged indirect infringer that contribute to or are inducing that direct infringement. Insofar as alleged direct infringement is based on joint acts of multiple parties, the role of each such party in the direct infringement must be described.

Patent L.R. 3-1. Compliance with this rule requires the plaintiff "to crystallize its theories of the case early in the litigation and to adhere to those theories once disclosed." *Bender v. Advanced Micro Devices, Inc.*, No. 09-cv-1149-MMC (EMC), 2010 WL 363341, at *1 (N.D. Cal. Feb. 1, 2010). It "takes the place of a series of interrogatories that defendants would likely have propounded had the patent local rules not provided for streamlined discovery." *Network Caching Tech., LLC v. Novell, Inc.*, No. 01-cv-2079-VRW, 2002 WL 32126128, at *4 (N.D. Cal. Aug. 13, 2002).

"[A]ll courts agree that the degree of specificity under [Patent] Local Rule 3-1 must be

sufficient to provide reasonable notice to the defendant why the plaintiff believes it has a 'reasonable chance of proving infringement.'" *Shared Memory Graphics LLC v. Apple, Inc.*, 812 F. Supp. 2d 1022, 1025 (N.D. Cal. 2010) (quoting *View Eng'g, Inc. v. Robotic Vision Sys., Inc.*, 208 F.3d 981, 986 (Fed. Cir. 2000)).  The local rules do not "require the disclosure of specific evidence nor do they require a plaintiff to prove its infringement case," but "a patentee must nevertheless disclose what in each accused instrumentality it contends practices each and every limitation of each asserted claim to the extent appropriate information is reasonably available to it." *DCG Sys. v. Checkpoint Techs., LLC*, No. 11-cv-03792-PSG, 2012 WL 1309161, at *2 (N.D. Cal. Apr. 16, 2012).

"Striking a patentee's infringement contentions is a severe sanction that should be used sparingly and only for good cause." *Avago Techs., Inc. v. IPtronics Inc.*, No. 5:10-CV-02863-EJD, 2015 WL 4647923, at *2 (N.D. Cal. 2015) (citation omitted).  As a result, "motions to strike initial infringement [contentions] are frequently treated as motions to compel amendment of the infringement contentions." *Geovector Corp. v. Samsung Elecs. Co.*, No. 16-CV-02463-WHO, 2017 WL 76950, at *7 (N.D. Cal. Jan. 9, 2017).

**II.   DICUSSION**

Apple contends that Uniloc's indirect infringement contentions are boilerplate and generic and do not comply with Patent Local Rule 3-1(d), which requires Uniloc to disclose "[f]or each claim which is alleged to have been indirectly infringed, an identification of any direct infringement and a description of the acts of the alleged indirect infringer that contribute to or are inducing that direct infringement."  Uniloc's contentions state, in relevant part:

> Other direct infringers of the system claims would be non-Apple users who put the infringing system into operation by activating those features. *Apple contributed to that infringement by installing on the devices the software that provides the accused functionality.  Apple induces infringement by providing instructions, such as those illustrated in Exhibit A, on how to activate the infringing features.*
>
> Apple directly infringed the device claims by making, offering to sell, selling, importing, and using the accused devices.  Other direct infringers of the device claims would be anyone else who resold the Apple devices, or who used the accused devices, including to perform the claimed functionality.  *Apple would*

> *contribute to and induce that direct infringement for the same reasons as above.*
>
> Apple directly infringed the method claims when it used both devices to perform the claimed steps as, for example, in the Apple store example, discussed above.  Apple also directly infringed when it used the beacon device, which causes the receiving device to automatically perform the step not performed by the beacon device. *To the extent there was other direct infringement as, for example, when two employees of the same entity were the users of both devices, or when someone other than Apple used the beacon device to cause the receiving device to automatically perform the remaining step, Apple would contribute to and induce that entity's or person's direct infringement for the same reasons as above.*

Dkt. No. 95-4 at 3-4 (emphasis added)[2].

### A.   Induced Infringement

With respect to induced infringement, Apple argues that Uniloc's contentions are insufficient because they do not state which instructions, advertisements, or promotions led to what infringing behavior; provide the identity of the alleged other direct infringers; or say how Apple supposedly knew the acts it induced constituted infringement.  A party asserting induced infringement must prove that: (1) a third party directly infringed the asserted claims of the patent; (2) the accused infringer induced those infringing acts; and (3) the accused infringer knew the acts it induced constituted infringement.  *Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, 843 F.3d 1315, 1332 (Fed. Cir. 2016); 35 U.S.C. § 271(b).  To satisfy the knowledge requirement, either actual knowledge or willful blindness is required.  *Global-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 786 (2011).

Uniloc largely ignores Apple's arguments and focuses its opposition on the fact that its infringement contentions reference an Apple iBeacon user guide, a portion of which is appended as Exhibit A to Uniloc's contentions.  *See* Dkt. No. 95-5.  Noting that the guide states that it provides "suggested uses and best practices to help ensure a highly effective deployment," Uniloc argues that Apple itself prepared that guide and therefore "would have well known its contents" and "would have known [that Uniloc] had identified Apple's user guide as containing specific instructions, advertisements or promotions that lead to infringing behavior."  Dkt. No. 99 at 2-3.

---

[2] All pin cites are to the page number that appears on the ECF header on the cited document.

4

Uniloc's contentions are deficient and must be amended to identify which specific instructions, advertisements, or promotions *Uniloc contends* led to what infringing behavior. *See, e.g.*, *Uniloc 2017 LLC v. Apple, Inc.*, No. 3:19-cv-01904-WHO, Dkt. No. 80 at 14 (N.D. Cal. Dec. 16, 2019) ("Merely pointing to support and instructions that Apple provides for using AirDrop is not enough to describe Uniloc's indirect infringement theory."); *Comcast Cable Commc'ns, LLC v. OpenTV, Inc.*, No. C16-06180 WHA, 2017 WL 2630088, at *5 ("In other words, boilerplate language that simply claims an accused infringer provided instructions on, advertised, or promoted the use of an accused product, without describing which instructions, advertisements, or promotions led to what infringing behavior, does not suffice under [Patent L.R.] 3-1(d)."); *Cap Co. Ltd. v. McAfee, Inc.*, No. 14-cv-05068-JD, 2015 WL 4734951, at *3 (N.D. Cal. Aug. 10, 2015) (finding plaintiff's recitation of defendant's indirect infringement through "sale and customer support and instruction of its customers" and website that does not reference the accused functionality insufficient under Patent Local Rule 3-1(d)); *Blue Spike, LLC v. Adobe Sys., Inc.*, No. 14-cv-01647-YGR (JSC), 2015 WL 335842, at *7 (N.D. Cal. Jan. 26, 2015) ("Moreover, although Blue Spike included advertisements for Adobe's products in support of its [infringement contention]s, it neither specifies which particular product each advertisement endorsed nor indicates which advertisement led to infringing behavior. Such circumstances create only insufficient boilerplate allegations of indirect infringement.").

With respect to identification of alleged direct infringers, Uniloc's contentions are also deficient. While Patent Local Rule 3-1 does not necessarily require the disclosure of specific third parties committing an alleged act of direct infringement, *see DCG Sys. v. Checkpoint Techs., LLC*, No. C 11–03792 PSG, 2012 WL 1309161, at *2 (N.D. Cal. Apr. 16, 2012), as discussed above, "[c]ompliance with this rule requires [Uniloc] to crystallize its theories of the case early in the litigation," *Bender*, 2010 WL 363341 at *1 (internal quotations and citation omitted), and Uniloc's contentions must "provide reasonable notice to [Apple] why [Uniloc] believes it has a reasonable chance of proving infringement," *Shared Memory Graphics LLC*, 812 F. Supp. at 1025 (internal quotations and citation omitted). Here, Uniloc's contentions are stated hypothetically, suggesting that Uniloc may not have a basis to contend that there actually are "other direct infringers." *See*

1  Dkt. No. 95-4 at 3-4 (stating that "[o]ther direct infringers of the system *would be* non-Apple users
2  . . . and "*anyone else who resold* the Apple devices"; "*[t]o the extent there was other direct*
3  *infringement* as, for example, when two employees of the same entity were the users of both
4  devices, or when someone other than Apple used the beacon device . . ..") (emphasis added). Such
5  speculative assertions are insufficient to comply with Patent Local Rule 3-1. *See generally, e.g.,*
6  *Solannex, Inc. v. Miasolé, Inc.*, No. 11-CV-00171–PSG, 2013 WL 1701062, at *3 (N.D. Cal. Apr.
7  18, 2013) ("The plaintiff cannot simply respond with nothing more than a conclusion based on
8  information and belief that something exists or occurs.") (internal quotations and citation omitted);
9  *Bender v. Maxim Integrated Prods., Inc.*, No. C 09-01152 SI, 2010 WL 1135762, at *2 (N.D. Cal.
10 Mar. 22, 2010) ("While plaintiff's statements may not be untrue, they are based on
11 assumptions. The Court will not order defendant to produce proprietary schematics for over 200
12 products based on an assumption.").

13 Uniloc does not respond to Apple's argument that Uniloc's contentions include no
14 assertion that Apple knew the acts it induced constituted infringement. If Uniloc has a basis to
15 contend that Apple had the requisite knowledge to support a claim of induced infringement, it
16 should so state and should identify the bases for such contention.

### B.     Contributory Infringement

Apple argues that Uniloc's contributory infringement contentions are similarly deficient because they are based solely on the allegation that Apple installs software on its products. *See* Dkt. Nos. 95, 95-4. Contributory infringement involves the sale of a component especially designed for use in a patented combination or process. 35 U.S.C. § 271(c) ("Whoever offers to sell or sells within the United States a component of a patented machine, manufacture, combination or composition, or a material or apparatus for use in practicing a patented process, constituting a material part of the invention, knowing the same to be especially made or especially adapted for use in an infringement of such patent, and not a staple article or commodity of commerce suitable for substantial noninfringing use, shall be liable as a contributory infringer."). To succeed on a contributory infringement claim, the patentee must prove that: (1) a third party directly infringed the asserted claims of the patent; (2) the accused infringer had knowledge of the

6

1 patent; (3) the component has no substantial non-infringing uses, and (4) that the component is a
2 material part of the claimed invention. *Fujitsu Ltd. v. Netgear Inc.*, 620 F.3d 1321, 1326 (Fed.
3 Cir. 2010). As with induced infringement, "contributory infringement requires knowledge of the
4 patent in suit and knowledge of patent infringement." *Commil USA, LLC v. Cisco Sys., Inc.*, 135
5 S. Ct. 1920, 1926 (2015).

6 Uniloc does not offer any argument in opposition to Apple's arguments. Instead, citing to
7 a prior order of this Court, Uniloc seems to acknowledge that its contentions are not sufficient.
8 *See Uniloc 2017 LLC v. Apple, Inc.*, No. 19-cv-01929-EJD (VKD), 2020 WL 978678, at *6 (N.D.
9 Cal. Feb. 28, 2020) ("For contributory infringement, Uniloc must describe how the [accused]
10 feature is especially made or adapted for use in infringement of the asserted claims and not a
11 staple article or commodity of commerce suitable for substantial noninfringing use."). Uniloc now
12 offers to amend its contributory infringement contentions to include the following text:

> The Accused Products include software that provides the ability to receive (or send) an inquiry message implementing the iBeacon protocol, determine when an additional data field has been added to that message, and read location information from that data field. The software written to provide that ability and thus adopt the claimed features is especially made or adapted for use in infringement of the '207 patent because it performs no other function, and thus has no substantial non-infringing use.

18 Dkt. No. 99 at 4.

19 Uniloc's proposed amendment still does not adequately disclose the factual bases for its
20 theory of contributory infringement, including facts supporting Uniloc's contention that the
21 iBeacon technology "performs no other function [other than claimed features], and thus has no
22 substantial non-infringing use," and how that technology is a material part of the claimed
23 invention. *See Fujitsu Ltd.*, 620 F.3d at 1326. In addition, Uniloc's contributory infringement
24 contentions, like its induced infringement contentions, do not identify the alleged direct infringers
25 or state whether and how Apple knew that its conduct contributed to others' direct infringement.

26 **C. Leave to Amend**
27 Uniloc does not respond to Apple's argument that Uniloc served non-compliant
28 infringement contentions after it had been advised on several prior occasions that similar

7

contentions do not meet the requirements of Patent Local Rule 3-1.  Uniloc's meager opposition to Apple's motion to strike strongly suggests Uniloc knew its original contentions were deficient when served.  This conduct is inconsistent with Uniloc's obligations to provide timely and complete contentions and to pursue its claims in good faith.  While striking Uniloc's indirect infringement contentions, as Apple requests, would be justified in these circumstances, the Court will exercise its discretion to permit Uniloc leave to amend.  However, Uniloc must show cause why it should not be required to reimburse Apple for its reasonable attorneys' fees and expenses incurred in bringing the motion to strike Uniloc's indirect infringement contentions.

## III. CONCLUSION

For the foregoing reasons, the Court grants Apple's motion to strike Uniloc's indirect infringement contentions, with leave to amend the contentions as specifically permitted above.  In granting leave to amend, however, the Court observes that the present order is not the first time that Uniloc has been advised of the requirements for compliance with Patent L. R. 3-1.  Uniloc is ordered to show cause why it should not be required to reimburse Apple's attorneys' fees and costs incurred in bringing the motion to strike.

Uniloc must serve its amended infringement contentions no later than **May 11, 2020**.  Uniloc also must respond to this Court's order to show cause no later than **May 11, 2020**.

**IT IS SO ORDERED.**

Dated:  April 27, 2020

VIRGINIA K. DEMARCHI
United States Magistrate Judge