UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| UNILOC USA, INC., et al.,<br><br>    Plaintiffs,<br><br>v.<br><br>APPLE INC,<br><br>    Defendant. | Case No. 19-cv-01692-EJD (VKD)<br><br>**ORDER RE DISCOVERY DISPUTE RE APPLE'S DOCUMENT REQUESTS NOS. 103-106**<br><br>Re: Dkt. No. 124 |

The parties ask the Court to resolve a dispute concerning plaintiffs Uniloc USA, Inc., Uniloc Luxembourg S.A., and Uniloc 2017 LLC's (collectively, "Uniloc") objections to defendant Apple Inc.'s ("Apple") requests for production of documents. Dkt. No. 124. The Court held a hearing on this matter on July 14, 2020. Dkt. Nos. 129, 134.

Having considered the parties' submissions and oral argument during the hearing, the Court concludes that Uniloc must produce documents responsive to the disputed document requests, as narrowed by the Court.

**I.    BACKGROUND**

The asserted patent in this case, U.S. Patent No. 7,587,207 ("the '207 patent"), originally was owned by Koninklijke Philips Electronics, N.V. ("Philips"). In 2009, Philips sold the '207 patent together with over one thousand other patents to IPG Electronics 503 ("IPG"). The parties refer to this patent portfolio as the "Philips-IPG Patents." Dkt. No. 124 at 1.

In 2012, IPG sold the '207 patent to Pendrell Technologies LLC ("Pendrell") as part of a group of hundreds of other patents, including some from the Philips-IPG Patents portfolio and some unrelated to that portfolio. In 2018, Pendrell sold the '207 patent to Uniloc as part of yet

another large group of patents. *Id.*

Apple now seeks discovery of documents reflecting the value of any patent or group of patents in the Philips-IPG Patents portfolio by means of the following document requests:

> <u>Request No. 103</u>:  All Documents reflecting any value attributed by Uniloc to any Philips-IPG Patent other than the '207 patent.
>
> <u>Request No. 104</u>:  All Documents which refer or relate to any prospective or executed license, assignment, sale, or transfer of any rights relating to the Philips-IPG Patents, including all Communications relating thereto.
>
> <u>Request No. 105</u>:  All Documents that refer [or] relate to any value assigned to any one or more of the Philips-IPG Patents, including, but not limited to, any valuations, appraisals, allocations, or reporting on any financial statement or report.
>
> <u>Request No. 106</u>:  All damages contentions, responses to interrogatories seeking information from Uniloc concerning damages, damages expert reports, and any transcripts of depositions of damages experts, including all exhibits hereto, in any Uniloc Litigation On Philips-IPG Patents.

*Id.*, Ex. 1.  Uniloc objects to Apple's efforts to obtain discovery concerning the value of any patents other than the '207 patent.  *Id.*, Ex. 2.

## II.  LEGAL STANDARD

A party may obtain discovery of any matter that is relevant to a claim or defense and that is "proportional to the needs of case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1).

## III.  DISCUSSION

### A.  Relevance of Apple's Discovery

Apple argues that its document requests seek information that is relevant to Uniloc's demand for royalty damages for alleged infringement of the '207 patent and Apple's defense to that demand.  Dkt. No. 124 at 2-3.  Specifically, Apple says that documents reflecting the value of the Philips-IPG Patents portfolio, groups of patents within the portfolio, or individual patents within the portfolio may inform how the '207 patent was valued in comparison to other patents in

2

the portfolio. *Id.* For example, Apple expects discovery will reveal whether the '207 patent was considered particularly valuable in the Philips-IPG transaction and in subsequent transactions, or whether the '207 patent and all other patents in the portfolio were treated as equally valuable. *Id.* at 2.

Uniloc agrees that documents reflecting the value of the '207 patent are relevant, and it represents that it has produced or will produce any such documents. *Id.* at 4. Uniloc has also agreed to produce valuations and licenses for all patents it acquired from Pendrell that are asserted in any of Uniloc's other disputes with Apple. *Id.* However, Uniloc argues that discovery concerning the value of any other patents in the Philips-IPG Patents portfolio is many steps removed from the question of what damages should be awarded in this case, which will require a determination of reasonable royalty for infringement of only a single patent, the '207 patent. *Id.* at 4-5.

Apple has already obtained discovery of documents reflecting the transactions in which ownership of the '207 patent transferred from Phillips to IPG, from IPG to Pendrell, and from Pendrell to Uniloc, and the parties do not dispute that this information is discoverable.[1] Among other things, the transaction documents reflect the purchase price paid in each transaction and the patents that were included in each transaction. The price paid to acquire all rights to a patent may be considered in assessing a reasonable royalty for a hypothetical license to the patent. *See, e.g., Integra Lifesciences I, Ltd. v. Merck KGaA,* 331 F.3d 860, 871 (Fed.Cir.2003) (concluding that damages award failed to taken into account several factors, including acquisition price for patent owner and all of its assets), *vacated and remanded on other grounds,* 545 U.S. 193 (2005); *Parthenon Unified Memory Architecture LLC v. Apple Inc.,* No. 2:15-CV-621-JRG-RSP, 2016

---

[1] Uniloc does argue that one transaction—the Uniloc-Pendrell transaction—is not relevant, but the authority on which it relies does not support that position. *See* Dkt. No.124 at 5-6 (citing cases). While the price paid to acquire a patent or patent portfolio does not establish an upper bound for a reasonable royalty, the price paid nevertheless may be considered by the finder of fact. *See, e.g., Spectralytics, Inc. v. Cordis Corp.*, 650 F. Supp. 2d 900, 914-16 (D. Minn. 2009) ("The Federal Circuit thus said [in *Integra Lifesciences*], in effect, that an actual sale in 1996 of the patent rights at issue in the hypothetical negotiation was relevant to calculating a reasonable royalty in that hypothetical negotiation. But the Federal Circuit has never held that, as a matter of law, a reasonable-royalty award cannot exceed what someone paid to acquire a patent portfolio that includes the patent-in-suit.")

3

1   WL 7670833 at *1 (E.D. Tex. Sept. 21, 2016) (permitting damages expert to provide opinion that
2   relied in part on patent purchase agreements); *Robocast, Inc. v. Microsoft Corp.*, No. CV 10-1055-
3   RGA, 2014 WL 202399 at *3 (D. Del. Jan. 16, 2014) (jury may determine weight to be accorded
4   valuation of patent in patent sale). Here, because of the very large number of patents involved,
5   these transaction documents may be of limited use in the absence of information about the value of
6   the '207 patent relative to the value of the many other patents within each portfolio. *See*
7   *Spectralytics, Inc. v. Cordis Corp.*, 649 F.3d 1336, 1347 (Fed. Cir. 2011) (affirming district court's
8   conclusion that jury was entitled to consider other circumstances explaining low value assigned to
9   patent during asset sale), *abrogated on other grounds*, *Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 136
10  S. Ct. 1923 (2016); *GPNE Corp. v. Apple, Inc.*, No. 12-cv-02885-LHK, 2014 WL 1494247 at *7
11  (N.D. Cal. Apr. 16, 2014) (discussing necessity of accounting for relative contributions to a
12  standard of patents essential to that standard in assessing reasonable royalty).

Apple acknowledges this authority but says that the limited utility of the transaction documents alone is precisely why it requires more information about the relative value of the patents in the Philips-IPG Patents portfolio. Dkt. No. 124 at 3; Dkt. No. 134 at 5:13-22. The Court agrees that discovery of this type of information generally is relevant to Apple's defensive damages case. The Court will now consider whether each of the disputed document requests is limited to documents relevant to that issue.

Request No. 103 calls for valuations by Uniloc of patents other than the '207 patent in the Philips-IPG Patents portfolio. For the reasons discussed above, this request seeks relevant information. However, Uniloc advises that it has no responsive documents because it performed no such valuations.

Request No. 104 seeks production of executed licenses, assignments, sales or other transfer of rights in any patent or patents in the Philips-IPG Patents portfolio, as well as "prospective" transactions concerning those patents. Actual assignments or licenses for a patent or patents within this portfolio likely constitute relevant evidence of the value of such patents. Although the parties do not address whether offers to sell or license patent rights are also relevant, at least one case cited by Uniloc supports the proposition that "prospective" transactions also may be relevant.

4

*See In re ChanBond, LLC Patent Litigation*, No. CV 15-842-RGA, 2020 WL 550786 at *3 (D. Del. Feb. 4, 2020) (unconsummated offer to sell patent-in-suit is relevant "datapoint" and admissible evidence at trial). However, the Court is not persuaded that "all documents" that "refer or relate to" such actual or prospective transactions are necessarily relevant.

Request No. 105 seeks documents reflecting the value assigned to any one or more of the Philips-IPG Patents by anyone. Unlike Request No. 103, this request is not limited to valuations by Uniloc, and it encompasses valuations of the entire portfolio or a subset of it. For the reasons discussed above, this request seeks relevant information.

Request No. 106 calls for the production of all documents that reflect positions taken in any Uniloc litigation with respect to damages for any patent within the Philips-IPG Patents portfolio, and all supporting materials. To the extent Uniloc has taken positions on the value of other patents within the Philips-IPG Patents portfolio, those positions are relevant to assessing the value Uniloc attributes to the '207 patent relative to the value of other patents in that portfolio, regardless of whether those positions are taken in matters against Apple or against other accused infringers. However, the Court is not persuaded that all documents within the scope of Request No. 106 are relevant. For example, the request asks for all of Uniloc's "responses to interrogatories seeking information . . . concerning damages," which is broad enough to encompass information that has nothing to do with the value of particular patents or groups of patents within the portfolio, and appears to encompass discovery of positions taken by Uniloc's litigation adversaries.

### B.     Burden of Apple's Discovery

Apart from an abbreviated reference to proportionality at the beginning of its portion of the discovery dispute letter, Uniloc does not explain how Apple's document requests impose a burden on Uniloc that is not proportional to the needs of the case. *See* Dkt. No. 124 at 4. Moreover, as the Court observed during the hearing, Uniloc's general objections to Apple's document requests are not sufficient to satisfy Uniloc's obligation under Rule 34(b)(2)(B) to "state with specificity the grounds for objecting to the request, including the reasons." Dkt. No. 134 at 27:12-23. However, the Court understands the crux of Uniloc's argument to be that searching for, reviewing,

and producing documents responsive to Apple's requests is unduly burdensome in view of the very large number of patents in the Philips-IPG Patents portfolio.

For its part, Apple emphasizes the amount in controversy and the importance of this discovery to Apple's rebuttal damages case. Apple says that Uniloc has demanded $1.1 billion in damages for Apple's alleged infringement of the '207 patent. Dkt. No. 124 at 2. Apple argues that the discovery it seeks from Uniloc is critical to evaluating the reasonableness and accuracy of that demand. *Id.*

The Court has already determined that Apple's document requests seek information relevant to the damages asserted in this case. Although some of Apple's document requests are overbroad and encompass documents that are not strictly relevant to assessing the relative value of the patents in the Philips-IPG Patents portfolio, the burden associated with this overbreadth can be mitigated by limiting the scope of Apple's document requests. However, in all other respects, the Court finds that Uniloc has not shown that Apple's document requests seek discovery that is disproportionate to the needs of the case.

## IV. CONCLUSION

Having considered the parties' arguments concerning the relevance and scope of Apple's document requests, the Court orders as follows:

<u>Request No. 103</u>: Uniloc shall produce all documents reflecting any value attributed by Uniloc to any Philips-IPG Patent other than the '207 patent. If no responsive documents exist, Uniloc must supplement or amend its answer to Request No. 103 to so state. If all responsive documents have been produced, Uniloc need not supplement or amend its response.

<u>Request No. 104</u>: Uniloc shall produce all documents, including communications, that constitute or reflect the terms of any prospective or executed license, assignment, sale, or transfer of any rights relating to the Philips-IPG Patents. At this time, the Court will not require Uniloc to search for and produce all documents that "refer or relate to" such actual or prospective transactions.

<u>Request No. 105</u>: Uniloc shall produce all documents reflecting any value assigned to any one or more of the Philips-IPG Patents, including, but not limited to, any valuations, appraisals,

6

allocations, or reporting on any financial statement or report. At this time, the Court will not require Uniloc to search for and produce all documents that "refer or relate to" such materials.

Request No. 106: With respect to any Uniloc Litigation On Philips-IPG Patents, Uniloc shall produce (a) all damages contentions by Uniloc regarding damages owed for infringement of one or more patents within the Philips-IPG Patents portfolio, (b) all damages expert reports served by Uniloc that concern damages for infringement of one or more patents within the Philips-IPG Patents portfolio, and (c) all transcripts of the deposition(s) of any Uniloc damages expert who expects to offer testimony regarding damages owed for infringement of one or more patents within the Philips-IPG Patents portfolio. At this time, the Court will not require Uniloc to search for and produce all of Uniloc's damages-related interrogatory responses or the damages expert reports and deposition transcripts of opposing damages experts. In addition, the Court will not require Uniloc to produce all exhibits used in the depositions of its damages experts in other matters, unless the expert's testimony cannot be understood without the exhibit.

The Court understands that Uniloc maintains all documents as electronically stored information. *See* Dkt. No. 134 at 33:19-21. It may be that the burden of searching for documents responsive to some of these requests can be mitigated further by the use of appropriate keyword search terms to identify potentially responsive documents, and the Court encourages the parties to discuss the possibility of using keyword search terms for this purpose, particularly with respect to Requests Nos. 104 and 105.

Uniloc shall produce the documents responsive to Requests Nos. 103-106, as narrowed above, by **August 31, 2020**.

**IT IS SO ORDERED.**

Dated: July 30, 2020

VIRGINIA K. DEMARCHI
United States Magistrate Judge