November 3, 2020

Magistrate Judge Virginia K. DeMarchi
United States District Court, Northern District of California
Robert F. Peckham Federal Building & United States Courthouse
Office of the Clerk
280 South 1st Street
San Jose, CA 95113

Re:   Case No. 5:19-cv-01692-EJD (VKD)
      *Uniloc USA, Inc., Uniloc Luxembourg S.A., and Uniloc 2017, LLC v. Apple Inc.*

Dear Judge DeMarchi:

I.     **Statement of the Dispute Requiring Resolution**

Apple respectfully asks the Court to enforce its previous Orders (Dkt. No. 169, 180) compelling Uniloc to fully respond to Apple's RFP No. 94, without excluding tax-related financial statements.

Uniloc submits that "financial statements"—which is what Apple asked for and this Court ordered Uniloc to produce—is a well-understood accounting term that does not include taxes. Apple only concluded after the close of discovery that it wanted Uniloc's taxes, so now it retroactively attempts to compel their production.

II.    **Parties' Positions**

       A.    **Apple's Position**

Uniloc attempts to relitigate this Court's Orders requiring Uniloc to produce its financial documents. To date, only Uniloc Luxembourg has produced only a ***single*** document in response to the Court's Order, apparently withholding other financial documents on the basis that they were used in preparation of its taxes. Even the one produced document, a 2018 E&Y report, acknowledges that Uniloc Luxembourg maintains other "accounting records." *E&Y 2018 Rep.* at 15. The Court should reject Uniloc's self-help exclusions from the Court's Order based on (1) the arguments made before the Court; (2) the explicit statements of Uniloc executives; and (3) the plain text of the RFP. The Court should order Uniloc USA, Uniloc Luxembourg, and Uniloc 2017 to produce (i) ***all*** financial documents even if used in preparation of Uniloc's tax returns; (ii) tax returns themselves.

*First*, both the briefing by the parties and the oral arguments before the Court addressed Uniloc's tax-related documents. In the underlying discovery letter, Apple cited a case concerning documents "collected and previously provided to Plaintiff's tax preparer." *See* Dkt. No. 155 at 3-4 (citing *Superior Industries*, which compelled such documents after previously compelling tax returns). To the extent it was unclear whether the dispute encompassed tax-related financial statements, during oral argument the Court itself asked to confirm that documents "provided in

conjunction with taxes" fall under the "rubric of financial statements." 9/29/20 Hearing Tr. at 4:9–20. Apple confirmed. *Id.*; *see also id.* at 8:6–10 ("[W]e should be able to tell a jury…'members of the jury, they say they struck gold, ***but when they talk to the tax collector they say they struck tin***.'"). Uniloc, on the other hand, never disputed that tax-related financial statements were within scope—not in its single-word objection to the RFP ("irrelevant"), not in its portion of the discovery letter, not at oral argument, and not in its objection to the Court's Order. Uniloc characterizes these repeated arguments as "passing," but the Court ***specifically asked*** Uniloc to address whether it agreed with Apple's description of "the categories of documents" at issue, and Uniloc expressed no disagreement. *Id.* at 9:4–22.

***Second***, Uniloc 2017's Rule 30(b)(6) witness and former CFO confirmed that Uniloc 2017's tax returns include the amortization of its patents—a specific, explicit assessment by Uniloc of the incremental change in value of its patents over time, including pre- and post-infringement litigation. *See* Drake Turner Dep. 31:11–18 ("**[Q:]** Does Uniloc 2017 have any amortization of patents that's included in its tax returns? **[A:]** Yes. **[Q:]** When—what is the last year that Uniloc 2017 has submitted tax returns that includes an amortization of patents? **[A:]** Tax year 2019."). This type of evaluation is not only within RFP 94, it is central to the RFP given the significance of statements made under the duties of candor "to the IRS, a U.S. government agency." *See FTC v. Qualcomm*, No. 17-cv-220, 132:22–23, 166:26–167:1 (N.D. Cal. May 21, 2019) (crediting contemporaneous statements to the IRS over Qualcomm's effort "to refute its own documents and statements" in determining patent royalty).

***Third***, the plain text of the RFP encompasses tax-related documents. Tax returns are literally a "statement" describing Uniloc's "finances": they recite Uniloc's assessment of the value of its assets, including its patents, and then identify what portion of that value is due to the government. Indeed, the President of Plaintiff Uniloc USA testified during deposition that he understood "tax returns" to be one "kind of financial document" generated by Uniloc. *See* Sean Burdick Dep. at 52:21–53:1 ("**[Q:]** During your time as president at UNILOC USA, what kind of financial documents did UNILOC generate? **[A:]** Well, we filed tax returns every year that would be a financial document.").

It is worth noting that in its written response to RFP 94, Uniloc did not object to it as overbroad, vague, or ambiguous. Uniloc's ***entire objection*** to RFP 94 was one word: "***irrelevant***." Only after Uniloc lost the underlying motion to compel did it seek to inject uncertainty over the scope of RFP 94.

Uniloc's primary response is that its tax-related documents are subject to a heightened discovery standard. *Infra*, citing *Premium Service v. Sperry & Hutchinson*, 511 F.2d 225 (9th Cir. 1975). Uniloc twice waived this argument: first, in failing to object on this basis in response to the RFP, and second, in failing to argue it on the underlying motion to compel. *Church & Dwight v. Mayer Labs.*, 2011 WL 6119146 (N.D. Cal. Dec. 8, 2011) (litigant waived proportionality objection when it did not object to overbreadth in written RFP response). Uniloc did not object to burden or proportionality ***at all***—let alone a specific proportionality objection based on tax-related status.

If the Court reaches this untimely position, the Court should reject it. NDCA courts have rejected identical arguments citing *Premium Service*, and instead determined that "tax returns are not subject to any greater degree of protection than other private financial information." *Advanced Microtherm v. Norman Wright Mech. Equip.*, 2009 WL 3320421, at *2 (N.D. Cal. Oct. 9, 2009) (distinguishing *Premium Service*, rejecting heighted standard, and following *Stokwitz v. U.S.*, 831 F.2d 893 (9th Cir. 1987), which the court characterized as "more recent" than *Premium Service* and which contained a "much more thorough analysis of the protection afforded tax returns.").

Further, "[t]he language of *Premium Service* is only that the 'unnecessary public disclosure of tax returns,' is to be avoided, which would seem to allow…any *non-public* disclosures." *Id.* Uniloc's tax documents are subject to the protective order, rendering discovery of them "non-public."

"Moreover, even if the court were to apply a 'compelling need' standard for discovery of the tax returns," Apple "made a sufficient showing." *See id.* "Where…the party seeking discovery of tax returns shows deficiencies in other financial records that were produced, there is a compelling need for disclosure of the tax returns." *Id.*; *Innovation Scis.*, *cited infra*, 2020 WL 3288082, at *3 ("there is a compelling need for the returns" when "the information contained therein is not otherwise readily obtainable"). Uniloc's evasive discovery responses have painted it into a corner—by repeatedly asserting that there are **no other documents** which reflect valuations of the Patent-in-Suit, Uniloc walled off the possibility that "other financial records that were produced" will reflect the information at issue (including amortization of the Patent-in-Suit). *Advanced Microtherm*, 2009 WL 3320421, at *2. This is not the run-of-the-mill case where tax-related information is gratuitous or duplicative—this is the narrow case where Uniloc has repeated that no other relevant documentation exists.

Uniloc's secondary argument is that while Apple repeatedly asked for financial documents, it never asked for **tax-related** financial documents ***specifically***. That argument assumes its own conclusion. "Financial statements" ***includes*** tax-related financial statements for the three reasons identified above—every request for financial statements was a reiteration of Apple's request for tax-related statements. Moreover Uniloc's "enumeration" requirement is inconsistent with the parties' discovery practice. For example, Uniloc notes that Apple's 6/9/2020 letter did not mention tax-related documents. But that letter also did not mention E&Y auditor reports, yet the parties agree E&Y reports were appropriately sought. Apple asked for ***categories*** of documents, not specific documents, which is how discovery ordinarily proceeds. 6/9/20 Letter at *2 (asking for "documents" that "show Uniloc's financials for each year" re: RFP 94). Indeed, Apple was ***forced*** to rely on category-based descriptions because Uniloc repeatedly refused to confirm whether it had responsive documents, and if so, what they were.

Uniloc also argues that various extra-record sources do not expressly include taxes in their definition of "financial statements." First, these sources are non-authoritative (Wikipedia) or do not contain a general scope or an intent to define (the SEC's guidance self-describes as setting a ***floor*** for minimum disclosures that comply with specific SEC regulations—regulations to which Uniloc isn't subject). Second, Uniloc's cherrypicked, extrinsic evidence is less persuasive than Uniloc's own witnesses acknowledging that tax-related documents are Uniloc's financial statements. Third, if tax-related documents are ***far beyond the pale of this RFP***, then why was

Uniloc silent when the Court invited Uniloc's comment on Apple's inclusion of tax documents in the "rubric of financial statements"?

Uniloc's final argument is that Apple should have filed this motion earlier. Apple filed the motion for leave two days after Judge Davila denied Uniloc's objection. Given Uniloc's stated intent to object, it would have been premature to seek to compel compliance with an order whose finality was disputed. Uniloc's position that enforcement proceedings were immediately ripe is surprising, given that it withheld responsive documents until after Judge Davila ruled. In any case, Uniloc has identified no prejudice in reaching the merits of this motion (and the Court has already granted such leave).

The Court should enforce its Orders and require Uniloc to fully respond to RFP 94, including production of (1) financial documents even if used in preparing tax returns and (2) plaintiffs' tax returns themselves.

### B. Uniloc's Position

With all due respect, if Apple wanted documents related to Uniloc's taxes, Apple did a uniformly poor job of asking for them, let alone moving to compel their production. Since discovery is closed, Apple seeks to cure this infirmity by retroactively reshaping its RFP contrary to the well-established meaning of the phrase Apple chose for it: "financial statements."

#### 1. Apple never requested Uniloc's tax records.

Apple served three sets of requests for production. *See* Dkt. Nos. 185-3 (Ex. 3 (1st RFPs)), -4 (Ex. 4 (2nd RFPs)), & -5 (Ex. 5 (3rd RFPs)). The word "tax" does not appear in the 106 RFPs, 22 Definitions, 15 Instructions and sub-parts, or indeed *anywhere* across Apple's 33 pages of discovery requests. Not once.

Apple first wrote to Uniloc about RFP 94 on June 9, and specifically enumerated "annual reports," "financials," "notes to the annual account" and "audit reports" as responsive. Dkt. No. 185-6 (Ex. 6 (letter)) at 2. The word "tax" does not appear anywhere in the letter. Not once.

The parties continued their correspondence up through the filing of the discovery dispute letter on September 18. *See* Dkt. No. 185-7 (Ex. 7 (correspondence)). Apple did not mention "taxes" in the 22 pages of correspondence. Not once.

The parties also spoke several times while meeting and conferring. Despite enumerating a variety of accounting documents, counsel for Apple never spoke the word "tax." Not once.

Apple served its first draft of its portion of the discovery dispute letter on August 24. Dkt. No. 185-8 (Ex. 8 (Apple's draft)). It stated that Apple sought production of "Uniloc's financial statements for the years after it acquired the '207 Patent." *Id.* at 1. Apple never demanded production of tax documents. Not once.

Apple served its final draft on September 17.  *See* Dkt. No. 185-7 (Ex. 7 (correspondence)) at 1-2.  Apple's section never mentioned the concept of production of tax documents.  Not once. Apple's arguments to the *contra*, above, assumes the Court will not read that portion of the letter:

> Notably, Uniloc does not lodge objections based on burden or proportionality. Indeed, furnishing a handful of financial statements for three years—2018, 2019, and 2020—imposes a minimal burden relative to the billion-dollar damages demand, and because "the information should already have been collected and previously provided to Plaintiff's tax preparer."  *Superior Indus.*, 2011 WL 13136008, at *3 (compelling six years of financial records).

Dkt. No. 155 at 3.  Respectfully, Apple's argument *infra* at page 2 regarding what Apple said about *Superior Industries* is duplicitous.  That opinion addressed the burden of producing *financial information* previously provided to a tax preparer, not production of the *tax preparer's work-product*.  Apple never suggested by this passage that *Apple* was asking for taxes.  That Apple leads with this transparently unsupported argument is telling.

Having not requested Uniloc's tax documents, Apple's passing use of the word "tax" twice during the September 29 hearing cannot retroactively change the scope of RFP 94 or the discovery letter.

After considering the discovery dispute letter and the parties' arguments, this Court's Order described Apple's request for production as seeking "Uniloc's financial statements."  Ex. 1 at 1. The Order did not use the word "tax."

Instead, it was not until October 7 that Apple first demanded Uniloc's tax documents.  Dkt No. 185-9 (Ex. 9 (correspondence)) at 4.[1]  This novel and unexpected request came:

- 40 days after the last day to serve RFPs;
- 9 days after the discovery deadline; and
- two days after the Civil L.R. 37-3 deadline.

It is now well beyond the time for Apple to seek Uniloc's tax documents.  *See, e.g.*, -1692 Case, Dkt. No. 178 (Oct. 23, 2020) at 4 (denying Apple's request because, *inter alia*, Apple "did not timely confer" and had not "complied with the letter and spirit of this Court's Standing Order").

### 2. Tax records do not fit within the recognized definition of "financial statements."

Apple's RFP 94 asked for "Uniloc's *financial statements* for each year beginning with the year in which Uniloc acquired the Patent-in-Suit through the present, including but not limited to, all audit reports including those prepared by Ernst & Young."  Ex. 3 at 19.  The term-of-art

---

[1]  It was not until October 15 that Apple suggested "financial statements" included taxes.  Ex. 9 at 2.

"financial statements" is well-understood in the accounting industry. It would include "audit reports including those prepared by Ernst & Young." It would not include taxes.

Apple's argument that taxes are "statements" which are "financial"—and thus must be produced—is akin to arguing that "candy" made of "cotton" is "cotton candy." Both arguments lead to inappropriate results. Instead, the Court should look at what "financial statements" means in the accounting industry; in essence, this is claim construction. For example, the *Financial Reporting Manual*—published by the U.S. Securities Exchange Commission's Division of Corporation Finance—describes "financial statements" without reference to taxes. *See* Dkt. No. 185-10 (Ex. 10 (Manual)) at 16-17. Indeed, the word "tax" does not appear within the entire section. *Id.* at 16-28; *see also, e.g.*, Dkt. No. 185-11 (Ex. 11 (Wikipedia: "Financial Statement")) (identifying five categories of financial information, none of which include taxes). If the S.E.C. and collective wisdom of Wikipedia do not consider taxes to be "financial statements," then neither should this Court. That Apple could not find even a *single* example to the contrary is telling.

### 3. Tax records are subject to qualified discovery privilege.

Had Apple ever even uttered the word "taxes" to Uniloc, then Uniloc would have noted that taxes are subject to a qualified discovery privilege: A movant must prove their "clear relevance" and a "compelling need" for their production.

The Ninth Circuit long-ago explained that "a public policy against unnecessary public disclosure arises from the need, if the tax laws are to function properly, to encourage taxpayers to file complete and accurate returns." *Premium Serv. Corp. v. Sperry & Hutchinson Co.*, 511 F.2d 225, 229 (9th Cir. 1975); *see also, e.g.*, *San Francisco Bay Area Rapid Transit Dist. v. Spencer*, No. C 04-04632 SI, 2006 WL 3050860, at *1 (N.D. Cal. Oct. 23, 2006) ("There is a strong public policy disfavoring disclosure of tax returns.").[2] So, courts recognize that "a qualified privilege applies to returns and will not require their production unless they contain information that is clearly . . . relevant to the subject matter of the action or to the issues raised thereunder and . . . there is a compelling need therefore . . . ." *Am. CalCar, Inc. v. BMW of N. Am., LLC*, No. 04-cv-0614-DMS(LSP), 2005 WL 8173176, at *2 (S.D. Cal. Nov. 4, 2005) (quotation marks omitted). As one court recently explained in a similar context:

> [T]ax returns are highly sensitive documents, and courts are reluctant to order their routine disclosure as part of discovery. Vector never acknowledges this heightened standard; and Vector certainly does not present evidence to allow the Court to find there is a compelling need to compel Plaintiff to produce its tax returns . . . .

*Innovation Scis., LLC v. Amazon.com, Inc.*, No. 4:18-CV-474, 2020 WL 3288082, at *3 (E.D. Tex. June 18, 2020) (denying motion to compel) (citation and quotation marks omitted).

---

[2] Apple's suggestion above, at page 3, to disregard the Ninth Circuit's *Premium Service* opinion is baffling. A KeyCite to the relevant Headnotes—8 and 9 on Westlaw—of that opinion turns up 151 cases citing it in support, including *as recently as last week*. There are just five district court cases distinguishing it between 1993 to 2016.

Apple's failure to mention this qualified privilege in the original discovery dispute letter is telling:  If Apple originally sought tax documents, then Apple—as the movant—would have been required to explain and meet those burdens.  That Apple *now* attempts to brief it proves how backdated Apple's arguments are.  Apple's mantra that Uniloc waived its right to object or rely upon the qualified privilege, is outlandish:  Uniloc had no reasonable clue that Apple even wanted Uniloc's taxes.  Similarly, the absence of any discussion in the Court's Order of the qualified privilege suggests that the issue was not before the Court, as the Court would have addressed it if the Court meant to order production of taxes.

In all events, this Court's Order forecloses Apple's last-ditch effort:

> On the record before the Court, *it is not possible to determine how, if at all*, Uniloc's valuations of its intangible assets may inform an assessment of a reasonable royalty for Apple's alleged infringement of the asserted patent.  The valuations *may or may not reflect information material to a reasonable royalty*.

Ex. 1 at 3 (emphasis added).  These statements establish that Uniloc's tax documents are neither "clearly" relevant, nor is there a "compelling" need for their production.

### 4. Uniloc produced all financial statements.

Finally, notwithstanding Apple's remonstrance, the Uniloc entities did produce *all* financial statements, per the Court's Order.  Uniloc Luxembourg generates financial statements per the laws of Luxembourg, and they were provided to Apple.  Uniloc USA and Uniloc 2017 do not generate such documents.

## III. Parties' Views on Whether a Hearing is Needed

### A. Apple's Position

Apple respectfully requests a hearing on these issues.

### B. Uniloc's Position

Uniloc respectfully requests a hearing on this issue.  To the extent the Court believes it would be useful to hear from an accountant, Uniloc proposes to invite one to the hearing.

## IV. Discovery Cut-off Dates for Fact and Expert Discovery

| Date | Event |
|---|---|
| September 28, 2020 | Fact Discovery Cutoff |
| December 11, 2020 | Expert Discovery Cutoff |

## V. Statement of Compliance Regarding Lead Counsel Meet-and-Confer

On October 14, 2020, counsel for Apple, Mark Fowler, and lead counsel for Uniloc, James Foster, met and conferred by telephone to discuss the issues raised in this dispute letter. Apple was also represented by Erik Fuehrer.

## VI. Specific Discovery Material at Issue

The materials cited in this dispute letter are attached hereto, in the following format.

| Exhibit No. | Subject Matter |
|---|---|
| Ex. 1 | Order re Discovery Dispute re Document Request No. 94 (DeMarchi, J.) (Dkt. No. 169). |
| Ex. 2 | Uniloc's Response to Apple's First Set of RFPs |

Uniloc submits that Apple's claim that "taxes" are a type of "financial statement" calls into question the context of Apple's requests for production, Apple's counsel's characterizations of RFP 94 in particular, and the well-understood meaning of the accounting term "financial statements." So, Uniloc moved for leave of Court to include relevant documents as exhibits. *See* Dkt. No. 185. Those additional exhibits are:

| Ex. 3, Dkt. No. 185-3 | Defendant Apple Inc.'s First Set of Requests for Production to Plaintiffs Uniloc USA, Inc. and Uniloc Luxembourg, S.A. (Nos. 1-100) (Jan. 3, 2020). |
|---|---|
| Ex. 4, Dkt. No. 185-4 | Defendant Apple Inc.'s Second Set of Requests for Production to Plaintiffs Uniloc USA, Inc. and Uniloc Luxembourg, S.A. (Nos. 101-102) (Jan. 30, 2020). |
| Ex. 5, Dkt. No. 185-5 | Defendant Apple Inc.'s Third Set of Requests for Production to Plaintiffs Uniloc USA, Inc. and Uniloc Luxembourg, S.A. (Nos. 103-106) (Apr. 24, 2020). |
| Ex. 6, Dkt. No. 185-6 | Letter from Christine K. Corbett, counsel for Apple, to James J. Foster, counsel for Uniloc (June 9, 2020) |
| Ex. 7, Dkt. No. 185-7 | E-mail correspondence between counsel for Apple and counsel for Uniloc (last email Sept. 18, 2020) |
| Ex. 8, Dkt. No. 185-8 | Apple's draft discovery dispute letter (Aug. 24, 2020) |
| Ex. 9, Dkt. No. 185-9 | E-mail correspondence between counsel for Apple and counsel for Uniloc (last email Oct. 30, 2020) |
| Ex. 10, Dkt. No. 185-10 | Excerpt of *Financial Reporting Manual*, Division of Corporation Finance, U.S. Securities Exchange Commission (July 2019 Ed.), available at https://www.sec.gov/files/cf-financial-reporting-manual.pdf (last visited Nov. 3, 2020) |
| Ex. 11, Dkt. No. 185-11 | Excerpt of *Financial Statement*, Wikipedia, available at https://en.wikipedia.org/wiki/Financial_statement (last visited Nov. 3, 2020) |

November 3, 2020<br>Page 9

Very truly yours,

| | |
|---|---|
| DLA PIPER LLP (US) | PRINCE LOBEL TYE LLP |
| | |
| */s/ Christine K. Corbett* | */s/ Aaron Jacobs* |
| Christine K. Corbett | Aaron Jacobs |

Enclosures